UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

STATE OF WISCONSIN,
KITTY RHOADES,

      Plaintiffs,

      v.                              Case No. 15-C-0855

TOM VILSACK,
KEVIN CONCANNON,
AUDREY ROWE,
JESSICA SHAHIN,
SUSAN HOLZER,

      Defendants.

---

DECISION AND ORDER GRANTING MOTION TO DISMISS (DOC. 11)

The State of Wisconsin and Kitty Rhoades, Secretary of the Wisconsin Department of Health Services (WDHS), sue U.S. Secretary of Agriculture Tom Vilsack and other federal officials at the U.S. Department of Agriculture (USDA) seeking a declaration that Wisconsin's drug testing requirement for food-stamp recipients is valid. The plaintiffs claim that defendants' final agency actions concerning 7 U.S.C. § 2014(b) and 7 C.F.R. § 273.2(a) are arbitrary and capricious, contrary to constitutional right, and in excess of statutory and jurisdictional authority. According to plaintiffs, a real, actual, and continuing controversy exists between the parties as to whether Wisconsin's drug testing requirement, Wis. Stat. § 49.79(9)(d), is preempted by federal law and whether a specific food-stamp provision, 7 C.F.R. § 273.2(a), was amended or invalidated by a superseding federal law regarding welfare recipients, 21 U.S.C. § 862b.

The defendants move to dismiss under Fed. R. Civ. P. 12(b)(1) and (6). A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of this court over the subject

matter related in the complaint. *See* Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(6) motion challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

When examining a complaint respecting a motion to dismiss, all well-pleaded facts are assumed to be true, and all such facts, as well as the reasonable inferences therefrom, are viewed in the light most favorable to the plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1368-69 (7th Cir. 1997). Any documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information subject to judicial notice may be considered by the court in reviewing a Rule 12(b)(1) or 12(b)(6) motion. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Matthews v. Hughes*, No. 14 C 7582, 2015 WL 5876567, *1 (N.D. Ill. Oct. 5, 2015). However, regarding a Rule 12(b)(1) motion the court may, in addition, take into account evidence submitted with the briefs to determine whether in fact subject matter jurisdiction exists. *Evers v. Astrue*, 536 F.3d 651 (7th Cir. 2008).

## ALLEGATIONS IN THE AMENDED COMPLAINT

The federal Supplemental Nutrition Assistance Program (SNAP), created in 1964, provides assistance for low- and no-income individuals to purchase food. (Doc 9, ¶ 24.) SNAP benefits are administered jointly by federal and state officials. (Doc. 9, ¶ 24.) Federal law sets forth various eligibility requirements for recipients of SNAP benefits, including a work requirement for certain able-bodied adults without dependents (ABAWDs). (Doc. 9, ¶ 5.) Wisconsin law then contains a work requirement for certain ABAWDs that can be satisfied through participation in the FoodShare (Wisconsin's name for SNAP) employment training program (FSET). (Doc. 9, ¶ 7.) States are not allowed to impose any

2

additional eligibility conditions upon food-stamp recipients except those expressly permitted by regulation in accordance with 7 C.F.R. § 273.2(a). (Doc. 9, ¶ 31.)

In 1996, reforms were made to federal welfare programs, including 21 U.S.C. § 862b, which states: "Notwithstanding any other provision of law, States shall not be prohibited by the Federal Government from testing welfare recipients for use of controlled substances nor from sanctioning welfare recipients who test positive for use of controlled substances." (Doc. 9, ¶¶ 25-29.)

Wisconsin Act 55 took effect on July 14, 2015. Act 55 set forth new drug screening and testing requirements for certain FoodShare recipients who are ABWADs participating in Wisconsin's FSET program. (Doc. 9, ¶¶ 8, 36.) In particular, Wis. Stat. § 49.79(9)(d)1 provides that WDHS

> shall promulgate rules to develop and implement a drug screening, testing, and treatment policy to screen and, if indicated, test and treat participants in an employment and training program under this subsection who are able-bodied adults for use of a controlled substance without a valid prescription for the controlled substance.

(Doc. 9, ¶ 37.) In addition, Wis. Stat. § 49.79(1m) provides that "[a]n individual who is a recipient under the food stamp program is considered to be a welfare recipient for purposes of 21 USC 862b." (Doc. 9, ¶ 39.)

On May 27, 2015, prior to the enactment of Act 55, defendant Susan Holzer emailed WDHS, indicating that she was aware of the proposal to require drug testing for certain FoodShare receipients. (Doc. 9, ¶ 43.) She wrote:

> As you are aware, States are prohibited under Federal law from imposing any additional eligibility conditions on individuals for the receipt of SNAP benefits. Therefore, [Food and Nutrition Service (FNS)] will continue to monitor closely any action the Wisconsin State Legislature takes on this legislation. If the legislation is subsequently enacted into law, FNS will work

3

with its General Counsel to determine how it interacts with Federal law governing the program and advise the State agency appropriately.

(Doc. 9, ¶ 43, attach. 2.)

Plaintiffs filed this lawsuit on the same day that Act 55 took effect, i.e., July 14, 2015. As alleged by plaintiffs, on or about July 15, 2015, after the filing of this case, defendant Vilsack "issued a public statement claiming that Wisconsin's FoodShare reforms" as described above "violate federal law." (Doc. 9, ¶ 45.[1]) However, plaintiffs did not attach to their amended complaint any evidence regarding exactly what Vilsack said. In their opposition brief, plaintiffs indicate that Vilsack's statements were widely reported in the news media, and they provided a website citation to an associated press article dated July 15, 2015. (Doc. 13 at 7 n.5.[2])

On September 8, 2015, Wisconsin Governor Scott Walker issued a "Statement of Scope" regarding the development by WDHS of administrative rules to implement the drug-testing provisions of the FoodShare reforms. (Doc. 9, ¶¶ 40-41; Doc. 11 Ex. 1.)

A June 3, 2014, letter from the USDA to the State of Georgia read, in part:

> FNS policy prohibits States from mandating drug testing of SNAP applicants and recipients. Section 5(b) of the Food and Nutrition Act and 7 C.F.R. § 273.2(a) expressly prohibit States from imposing additional standards of eligibility for SNAP participation. Requiring SNAP applicants

---

[1] Document 9 is an amended complaint, explaining how the allegations here include alleged events occurring after the original complaint was filed.

[2] The citation did not work when the court tried it. However, the court found the AP article reported elsewhere. The article quotes Vilsack as actually saying that "Congress has 'repeatedly rejected the expensive, intrusive practice of suspicionless drug testing,' which . . . has been shown to uncover 'very little drug use.'" *Vilsack: Federal law bars Wisconsin food stamp testing*, http://fox11online.com/news/state/vilsack-federal-law-bars-wisconsin-food-stamp-drug-testing (last visited Sept. 19, 2016). The AP article is hearsay as to what Vilsack actually said and thus cannot be used by the court. But plaintiffs do not dispute that the article quotes a statement very different from that alleged in the amended complaint. Instead, they contend that a disagreement about the content of Vilsack's statement is not a matter that a court should sort out on a motion to dismiss. (Doc. 13 at 19.) While that position may be correct regarding a Rule 12(b)(6) motion, it is not correct as to a Rule 12(b)(1) motion. The court could have considered an affidavit from Vilsack. But it cannot use the online newspaper story for the truth of what Vilsack said.

4

Case 2:15-cv-00855-CNC   Filed 09/28/16   Page 4 of 14   Document 18

and recipients to pass a drug test in order to receive benefits would constitute an additional condition of eligibility, and therefore, is not allowable under law.

> . . . . FNS shares the State's commitment to program integrity and is available to provide guidance and technical assistance on options available to Georgia to help promote program integrity and ensure program access consistent with Federal law and regulation.

(Doc. 9, ¶ 44, attach. 3.)

## ANALYSIS

Defendants argue primarily that this case is not ripe for review. (Doc. 12 at 15.) The ripeness doctrine stems from Article III, section 2 of the U.S. Constitution, which limits the jurisdiction of federal courts to "cases" and "controversies." The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967) (abrogated on other grounds by *Califano v. Sanders*, 430 U.S. 99 (1977)).

Plaintiffs bring their claims under the Administrative Procedures Act and Declaratory Judgements Act, which allows for pre-enforcement review of final agency action and a declaration of the legal rights and relations of parties in interest. (Doc. 9 at 14.) When determining whether a controversy is ripe for pre-enforcement review of a statute or regulation, two criteria are evaluated: "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 148.

5

A.   Fitness of the issue for judicial decision

To determine whether the issue is fit for judicial decision, the court should examine whether the action in question constitutes final agency action and whether the issue raises a purely legal question.  *See id*. at 148-49.

The Administrative Procedures Act defines agency action as "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).  For agency action to be considered final, two conditions must be met:  "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow."  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks and citations omitted).  "The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *W. Ill. Home Health Care, Inc. v. Herman*, 150 F.3d 659, 662 (7th Cir. 1998).

Plaintiffs assert that each of the following three communications by the defendant constitutes final agency action:  the email sent from the USDA to the State of Georgia on June 3, 2014; the email from Holzer to WDHS sent on May 27, 2015; and the public remarks made by Defendant Vilsack on July 15, 2015. (Doc. 13 at 18.)   These communications, in particular defendant Vilsack's statement, constitute final agency actions, according to plaintiffs, because they are "clear, 'simple,' and 'declarative,' and thus final under Seventh Circuit law," citing *Western Illinois Home Health Care*. (Doc 13 at 18.)   In *Western Illinois Home Health Care*, the Wage and Hour Division of the Department of

6

Labor (DOL) initiated an investigation to see if the defendants were complying with the Fair Labor Standards Act. *W. Ill. Home Health Care, Inc.*, 150 F.3d at 660. After concluding its investigation, the DOL sent a letter to the defendants stating:

> I will be closing our investigation with no further action . . . . At a minimum, a joint employment relationship exists in this situation. If your client fails to pay overtime in accordance with this enforcement position it does so at its own peril . . . . If at any time in the future your client is found to have violated the monetary provision of the FLSA, it will be subject to such penalties.

*Id.* at 661. The court ruled this letter constituted final agency action because "the letter is not at all tentative or interlocutory in nature" and because "legal consequences flow from it, both with respect to [defendants'] obligations to their employees and with respect to [defendants'] vulnerability to penalties should they disregard the DOL's determination." *Id*.

Plaintiffs contend that these three communications constitute final agency action because, similar to the final agency action in *First National Bank v. Comptroller*, defendants' "unequivocal position carries 'enormous potential liabilities' for Wisconsin." (Doc. 13 at 18.) In *First National Bank*, the bank as trustee of a collective investment fund, asked the Comptroller of the Currency whether its proposal to disburse properties owned by the fund was a violation of certain regulations or, alternatively, if a waiver could be granted. 956 F.2d 1360, 1362 (7th Cir. 1992). The Comptroller responded, informing the bank that the proposal would violate applicable federal regulations and that enforcement would not be waived. *Id*. at 1362. The court held that the Comptroller's letter ruling constituted final agency action because the bank requested "not advice, perhaps on a purely hypothetical course of action, but permission to go forward with a concrete proposal that it had already put to the fund participants." *Id*. at 1364. In addition, the Comptroller's response did not offer a merely tentative view or request additional information before

7

making a definitive ruling, but a flat out refusal to authorize the bank to restructure its investment fund as it wanted to do. *Id*.

Here, the court is not persuaded that any of defendants' communications rise to the level of final agency action. Although the email to Georgia may have marked the consummation of the agency's decisionmaking process regarding *Georgia*'s program, it has no bearing on the plaintiffs here. The email is directed to a different state regarding a different program, and the amended complaint does not assert that the USDA took any action against Georgia afterward. Further, the pleadings here fail to indicate that the drug-testing legislation enacted by Georgia resembles the legislation enacted by Wisconsin.

The email from Holzer to Wisconsin differs significantly from the letters in *Western Illinois Home Health Care* and *First National Bank*. Unlike the letter in *Western Illinois Home Health Care*, Holzer's email discusses no legal consequences for Wisconsin. It did not create or warn of any penalties Wisconsin would suffer if it passed the bill, whereas the letter in *Western Illinois Home Health Care* was issued at the conclusion of a formal investigation, set forth the legal position of the agency and identified the action that would result in penalties. Indeed, the text of Holzer's email indicates its *lack* of finality. Holzer says that FNS "will continue to monitor" the situation and that *if* the legislation was subsequently enacted into law, FNS would assess how the law interacts with federal law *then* "advise the State agency appropriately." The email was sent by Holzer *before* any formal investigation of enacted statutory language occurred and reflected her expectation that additional events would occur prior to the federal agency's final position. It is unclear whether the language of the enacted statute is the same as what Holzer reviewed. Moreover, contrary to *First National Bank*, Holzer's email did not reflect a definitive ruling

8

nor was it sent in response to a request from the plaintiffs for authorization to implement Act 55.

Further, Vilsack's public comments, apparently made to a reporter the day after the plaintiffs filed suit, do not constitute final agency action. The comments were not made as part of an official ruling that created legal obligations or consequences for the plaintiffs, simply because Vilsack is the Secretary of Agriculture. *See In re Murray Energy Corp.*, 788 F.3d 330, 335–36 (D.C. Cir. 2015) (finding that public statements about an agency's legal authority to issue a proposed rule did not constitute final agency action when the statements were unconnected to a final rule or other final agency action). Although defendants do not dispute that Vilsack's comments reflected a general position on the issue of testing certain FoodShare recipients for a reporter's use, the comments were not made or communicated directly to the defendants such as the communications in *Western Illinois Home Health Care*.

Defendants maintain they could not have taken final agency action until plaintiffs submitted an updated state plan of operation for review by FNS. Plaintiffs disagree, arguing that 21 U.S.C. § 862b displaced 7 U.S.C. § 2014(b) and as a result "each State has the right to drug test SNAP recipients at its sovereign option, as part of a SNAP employment training program or otherwise, without first seeking permission from the Secretary or justifying such testing in its SNAP plan." (Doc. 13 at 5.)

The facts alleged lead the court to conclude that plaintiffs are unable to establish that defendants have taken final agency action regarding this matter. Plaintiffs have taken no steps whatsoever to implement Act 55, whether it be issuing new rules, updating a state plan, or heading directly to implementation without plan approval by the defendants. The

9

defendants appear neither to have been asked to provide a final ruling nor to have been forced to do so by the plaintiffs' actions. Any possibility of future action by the defendants is, at this time, hypothetical. Nothing appears to have barred Wisconsin from contacting the defendants after the legislation passed and formally presenting the issue and the state's proposed drug-testing rules (apparently not yet developed) to defendants for a true determination of whether they violate the federal SNAP provisions. Holzer indicated that the state could do so. Plaintiffs ask this court to accept for ripeness—in place of a definitive, formal determination by defendants—some preliminary thoughts on the legislation, a determination regarding Georgia's legislation, and general public statements made to a reporter. But the court believes that a case or controversy requires more.

The other balancing factor to consider in determining whether this issue is fit for judicial review is whether the issue is a purely legal question. "Where a petition involves [a] purely legal claim[] in the context of a facial challenge to a final rule, a petition is 'presumptively reviewable.'" *Owner-Operator Indep. Drivers Ass'n v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011) (citing *Sabre, Inc. v. Dep't of Transp.*, 429 F.3d 1113, 1119 (D.C. Cir. 2005)). "In light of this presumption, a petitioner need not demonstrate individual hardship to show ripeness unless the agency identifies 'institutional interests favoring the postponement of review.'" *Id*.

Here, plaintiffs contend that the main question is a purely legal one: Is Wisconsin's drug-testing statute preempted under federal law? (Doc. 13 at 11.) Regardless, without actual rules under Act 55 and more concrete or definitive statements from the defendants in response, plaintiffs' contentions are too speculative for a federal court to address. Act 55 states that the WDHS should promulgate rules about drug testing, and although the

10

governor issued a statement of scope regarding such rules, the plaintiffs fail to point to any rules that Wisconsin promulgated or any other implementation of the drug-testing requirement. Meanwhile, the defendants have issued no definitive, final opinion on the law or its implementation. Hence, plaintiffs are asking the court to decide this case in a vacuum, not knowing exactly how Wisconsin will implement the drug testing program and what the defendants will find to be acceptable or unacceptable. Therefore, a decision on the merits of this case would be advisory.

B.     Hardship to parties of withholding court consideration

The other criterion for assessing whether a case is ripe for judicial review is the "hardship to the parties of withholding court consideration." *Abbott Labs.*, 387 U.S. at 148. Hardship is assessed by whether the action has a "direct and immediate" effect on a party. *Id*. at 152. However, "hardship need not take the form of an actual enforcement action; the threat of enforcement is sufficient because the law is in force the moment it becomes effective and a person made to live in the shadow of a law that she believes to be invalid should not be compelled to wait and see if a remedial action is coming." *Owner-Operator*, 656 F.3d at 586. "The principle at work in the hardship analysis is that a plaintiff should not be required to face the Hobson's choice between forgoing behavior that he believes to be lawful and violating the challenged law at the risk of prosecution." *Smith v. Wisc. Dep't of Agric., Trade, & Consumer Prot.*, 23 F.3d 1134, 1141 (7th Cir. 1994).

Plaintiffs contend that Wisconsin "must choose between enforcing its own state law and facing the specter of losing millions of federal dollars, or not enforcing its own state law." (Doc. 13 at 12) (emphasis omitted). On the other hand, defendants submit that there is no allegation suggesting that to date defendants have taken any action that has had a

11

direct and immediate impact on plaintiffs. (Doc. 12 at 17-18.)  Moreover, defendants noted that they cannot take any action against a state based on its administration of SNAP benefits unless the Secretary follows an administrative process that is subject to judicial review in federal court.  (Doc. 12 at 2 (citing 7 U.S.C. §§ 2020(g), 2023; 7 C.F.R. pt. 2760), 18 (citing *Home Bldrs. Ass'n v. U.S. Army Corps of Eng'rs*, 335 F.3d 607, 619 (7th Cir. 2003)).)  Further, 7 U.S.C. § 2020(g) provides that if the Secretary (i.e., Vilsack) determines that the state is not complying with federal SNAP requirements, he must inform the state and allow the state a period of time for correction of the failure.  The amended complaint fails to allege that Wisconsin received any such notice.

In *Metropolitan Milwaukee Ass'n of Commerce v. Milwaukee County*, the county enacted an ordinance establishing requirements for contractors doing business in the county.  325 F.3d 879, 880 (7th Cir. 2003).  MMAC sued the county and sought pre-enforcement review of the ordinance, alleging that the ordinance was preempted by federal statute and violated the first amendment.  *Id*.  The court held that pre-enforcement review was proper and a case or controversy existed.  *Id*. at 883.  It ruled that to establish hardship MMAC had to demonstrate that "enforcement is certain, only delayed" or that "even though enforcement is not certain, the mere threat of future enforcement has a present concrete effect on MMAC's day-to-day affairs and irremediably adverse consequences would flow from a latter challenge."  *Id*. at 882 (internal quotes omitted).

Here, enforcement is not certain because defendants have not taken a final position on the legality of Wisconsin's law.  It is speculative whether FNS will disagree with plaintiff's assertion that 21 U.S.C.A. § 862b preempts 7 C.F.R. § 273.2(a).  In addition, the potential of future enforcement does not create irremediably adverse consequences for the plaintiffs.

12

The present case resembles *Toilet Goods Ass'n v. Gardner*, in which plaintiffs sought pre-enforcement review of an administrative regulation. The court determined that the issue was not ripe, in part because "no irremediable adverse consequences flow[ed] from requiring a later challenge to this regulation." A "refusal to admit an inspector here would at most lead only to a suspension of certification services to the particular party, a determination that can then be promptly challenged through an administrative procedure, which in turn is reviewable by a court." 387 U.S. 158, 164-65 (1967). The court found that such a review would provide "an adequate forum for testing the regulation in a concrete situation." *Id*. at 165. Additionally, considering all of the factors set forth in *Abbott Laboratories*–the sister case to *Toilet Goods*, decided on the same day–the court stated that "we believe that judicial appraisal of these factors is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge made here." *Id*. at 164.

Similarly, this court believes the current case requires surer footing. It is unclear how Wisconsin will implement the drug-testing program and what, if any, additional issues may or may not arise from it. Here, fewer factors favoring judicial resolution exist than there were in *Toilet Goods*. No final agency action has occurred. And, as in *Toilet Goods*, an administrative procedure exists that would solidify the issues in question and create a record that eliminates the uncertainty and speculation that surrounds this matter as it currently stands.

CONCLUSION

Because the issue presented is not ripe, no case or controversy exists and the court lacks subject matter jurisdiction. It follows that this matter must be dismissed under Rule

13

12(b)(1), and there is no need to address the defendants' additional arguments. Consequently,

IT IS ORDERED that defendants' motion to dismiss (Doc. 11) is granted and this action is dismissed for lack of subject matter jurisdiction.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2016.

                                          BY THE COURT

                                          /s/ C.N. Clevert, Jr.
                                          C.N. CLEVERT, JR.
                                          U.S. DISTRICT JUDGE